Johnson, J.
The questions arising out of the grounds of this motion, are:—
1. As to the rule by which the value of slave hire is to be ascertained.
2. Whether the defendant is bound to account to plaintiff for the rent of the wife’s land.
In the case of Lyles v. Lyles, 1 Hill’s Ch. Rep. 81, and in some other cases there referred to, the Court adopted the old rule of allowing £10 for the hire of full task hands as the standard of the value of slave hire, not as an arbitrary rule of value, but the result of calculations founded on observation and experience, and of coure liable to be varied by circumstances ; and notwithstanding the care that has been taken, it still appears that the principle of the rule is not universally understood. Where an estate in the hands of an administrator consists of lands and negroes, it is obviously the interest of those entitled to it, that the negroes should be kept together and employed on the lands, although the annual income might fall short of what the slaves and lands might rent and hire for; the lands would probably be less deteriorated in value, than in the hands of a tenant who would feel no other interest in it than for the time which he occupied it; generally the slaves would be better provided for, and more attention bestowed on the old and the young, than in the hands of strangers, who would feel no sympathy for them; and the object of adopting the £10 rule, so far from being intended as a favor to the administrator, was to charge him in the absence of regular accounts, with the full value of what he might reasonably be supposed to have made with ordinary care and industry — and that will appear by referring to the note annexed to the case of Lyles v. Lyles. Cotton estimated at twelve and-a-half cents per pound, is the basis of that calculation, and in Myers v Myers, the evidence established that price, as the average of a *series of years. If, therefore, the price of cotton should be greater 0 for one or more years, or the average price through a succession <- of years should be higher, the rule must be necessarily varied to suit the *284 particular case, and a corresponding increase of hire allowed. Or, if from adventitious circumstances, such as unusually productive lands, favorable seasons, and the superiority of the hands, greater crops than the general average were actually, or might, with ordinary industry, have been made, a corresponding increase of hire of slaves and rents of land ought to be allowed. The rule imports no more than that the administrator shall not be charged with less than £10 per hand, where no accounts are rendered, and certainly does not protect him where greater profits were or might have been made with ordinary industry. Let us suppose, for example, that the average price of cotton was twenty cents per pound, and that two and a-half bags of 300 lbs. each was the average crop for a single hand, that would amount to one hundred and fifty dollars; and if we deduct from this $51 54 the estimated expenses on each hand, adopted in the note in Lyles v. Lyles, and which would not be materially varied by the increased price of cotton, it would leave a balance of $98 46 to be credited to the hire of the slave, for which the administrator would be bound to account. The rule was never intended to operate imperatively, but to supply a principle by which the extent of the liability of persons standing in this situation was to be ascertained.
In this case, however', the slaves were employed but a small portion ,of their time in planting-, but for the most part in preparing timber for market, and working on the railroad; and the necessary inference is, that these were more profitable pursuits; consequently a rule based on an estimate of cotton-planting cannot apply, and for the reasons before given, the usual prices paid for hire, would be an unsafe rule. The nett income which might be reasonably calculated on from these employments after deducting the probable expenditures, furnishes therefore the only practical and safe rule, and the Commissioner will adopt it in the reference which will be ordered.
As to the land rents. — The Chancellor is certainly correct in laying down the rule, that if one of several co-tenants cultivates or uses no more than his own share of the lands, he is not liable to his co-tenants for rent; but with great deference, it has no application to the case in hand. It is true, the parties were co-tenants, but the ^defendant stood -I also in the relation of guardian to the plaintiff, Mrs. Harley, and in that character he was bound to make her lands productive if he could, _ and is liable, if he has neglected to do so. He must therefore account for rents.
It is therefore ordered, that the case be referred back to the Commissioner to examine and report to the Circuit Court on the matters before noticed, according to the principles of this decree.
O’Neall, J., and Harper, J., concurred.